UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

| | | |
|---|---|---|
| CURTIS O. JACKSON, # 282320, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:13-cv-1297 |
| | ) | |
| v. | ) | Honorable Paul L. Maloney |
| | ) | |
| CATHY STODDARD, et al., | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendants. | ) | |
| | ) | |

This is a civil rights action brought *pro se* by a state prisoner pursuant to 42 U.S.C. § 1983.  Plaintiff is currently and inmate at the Marquette Branch Prison (MBP).  This lawsuit arises out of conditions of his confinement between April 2013 and November 2013 at the Ionia Maximum Correctional Facility (ICF).  (Compl. at 4, 7, ECF No. 1, PageID.4, 7).[1]  The defendants are six employees of the Michigan Department of Corrections (MDOC) at ICF:  Warden Cathleen Stoddard, Captain Frederick Hogle, Corrections Officer Rebecca Wood, Corrections Officer Matthew Wellman, Librarian Joe Novak, and Inspector Khris Nevins.  Plaintiff sues all defendants in their individual and official capacities.  (*Id.* at 2-3, ¶ III, PageID.2-3).  Plaintiff seeks an award of damages against all defendants and injunctive relief against Warden Stoddard.  (*Id.* at 8, ¶ V, PageID.8).

---

[1]Plaintiff failed to number the pages of his complaint in any coherent order.  The complaint is eight pages long.  Thus, the citations herein are to pages 1 through 8 and those pages correspond to the PageID numbers.

The matter is before the court on defendants' motion for partial summary judgment based on the affirmative defense provided by 42 U.S.C. § 1997e(a). (ECF No. 21). Plaintiff has filed his response. (ECF No. 29-31, 33). For the reasons set forth herein, I recommend that all plaintiff's claims for damages against defendants in their official capacities be dismissed with prejudice because they are barred by Eleventh Amendment immunity. I recommend that plaintiff's claim seeking injunctive relief against defendant Stoddard be dismissed because it is moot. I recommend that defendants' motion for partial summary judgment be granted and that all plaintiff's claims for damages against defendants in their individual capacities be dismissed with the exception of the claims excluded from defendants' motion. Defendants did not seek dismissal of plaintiff's claims that Warden Stoddard provided him with tooth powder rather than toothpaste in violation of his Eighth Amendment rights and that Librarian Novak and Captain Hogle destroyed plaintiff's law library book request forms in violation of his First Amendment rights. (Def. Brief at 10, ECF No. 22, PageID.236).

## I.    Plaintiff's Allegations

The bulk of plaintiff's allegations are against ICF's warden and reflect his dissatisfaction with conditions of his confinement as a maximum security inmate housed in ICF's administrative segregation unit. Plaintiff states that ICF's warden provided "tooth powder" rather than toothpaste. He alleges that the warden provided him with used razors. (Compl. at 4, PageID.4). Plaintiff complains that he was not trusted with cleaning supplies. He alleges that unsanitary conditions in his cell, the administrative segregation unit's shower stalls, and the food cart used for delivering

meals violated his Eighth Amendment rights.  Further, he alleges that defendant Stoddard violated his Eighth Amendment rights by adopting a "lights out" program on May 16, 2013, where the electricity is temporarily cut off to an incorrigible prisoner's cell, which resulted in plaintiff going 5 or 6 days without having electricity in his cell. (*Id.* at 4-5, PageID.4-5).

Plaintiff alleges that Warden Stoddard and Officer Wellman violated his First Amendment right of access to courts by "falsely" indicating that plaintiff refused to participate in a video hearing held on September 12, 2013, in Crawford County Probate Court.  He alleges that defendant Wellman violated his First Amendment rights by "falsely" indicating that plaintiff refused to participate in a video hearing held on July 24, 2013, in a civil case in 47th District Court in Farmington Hills, Michigan.  Plaintiff states that both cases were dismissed.  He does not allege that he pursued an appeal in either case. (*Id.* at 6, PageID.6).  Further, plaintiff alleges that Warden Stoddard retaliated against him by failing to respond to his grievance appeals to Step II of the MDOC's grievance process.  (*Id.* at 4-5, PageID.5-6).

Plaintiff alleges that Librarian Novak and Captain Hogle destroyed book request forms to prevent him from receiving law books.  (*Id.* at 5, PageID.5).

Plaintiff alleges that Captain Hogle, Officer Wood, and Officer Wellman violated his First Amendment rights by retaliating against him on unspecified occasions by searching his cell and destroying his complaints and grievances.  (*Id.* at 5, PageID.5). Further, defendants Wood and Wellman purportedly retaliated against him in

violation of his First Amendment rights by depriving him of meals.  (*Id.* at 6, PageID.6).

Plaintiff alleges that defendants Captain Hogle and Inspector Nevins "interfere[d] with his Jewish beliefs as retaliation for plaintiff writing complaints and grievances."  (*Id.* at 6, PageID.6).  He states that Hogle and Nevins restricted his exercise of his religious beliefs by destroying plaintiff's religious items:  "prayer rug, Star David necklace, Torah, tracts, and Kosher products."  (*Id.*).  Further, plaintiff alleges that Hogle and Nevins "placed a restriction on plaintiff's mail by restricting Jewish believers and Jewish organizations from sending correspondence[] to [plaintiff] regarding Judaism Religion."  (*Id.*).  Specifically, plaintiff alleges that Inspector Nevins prevented him from receiving a Jewish magazine entitled "Faith."  Finally, plaintiff alleges that these defendants violated his First Amendment rights as follows: "Defendants Hogle and Nevins admitted [i]n April 2013 that they have the facility mailroom forward all of plaintiff's incoming mail regarding his religion to their office, and then they would destroy the mail."  (*Id.* at 7, PageID.7).  Both defendants allegedly stated, "if plaintiff wanted to exercise his religion he would have to stop writing grievances and complaints about the conditions at the prison.  Every time plaintiff exercise[d] his Jewish faith, defendants Hogle and Nevins would punish plaintiff by confiscating and destroying his religious materials."  (*Id.*).

## II.    Eleventh Amendment Immunity

All plaintiff's claims for damages against defendants in their official capacities are barred by Eleventh Amendment immunity.  The Eleventh Amendment bars suit in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Michigan has not consented to civil rights suits in federal court.  *See Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004).  A suit against a state officer in his or her official capacity is simply another way of pleading an action against the state.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *VIBO Corp. v. Conway*, 669 F.3d 675, 691 (6th Cir. 2012).  Furthermore, states and their departments are not "persons" within the meaning of 42 U.S.C. § 1983.  *See Will v. Michigan Dep't of State Police*, 491 U.S. at 71.  Defendants are entitled to dismissal with prejudice of all plaintiff's claims for monetary damages against them in their official capacities.[2]

## III.    Mootness

Plaintiff seeks an injunction against Warden Stoddard regarding conditions at ICF.  Plaintiff is an inmate at MBP.  (ECF No. 64, PageID.625).  His claim for injunctive relief against defendant Stoddard is  moot.  *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

---

[2]This recommendation for dismissal is made pursuant to statutory authority. *See* 28 U.S.C. §§ 1915A(b)(2), 1915(e)(2)(B)(iii); 42 U.S.C. § 1997e(c)(2).

## IV.   Defendants' Motion for Summary Judgment

### A.   Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010).  The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676 (6th Cir. 2011).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim.  *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).  Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact.  *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see LaQuinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 335 (6th Cir. 2010).

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). The moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules:  Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Court of Appeals has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence satisfying the burden of persuasion and that the

evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)); *see Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012); *Cockrel*, 270 F.2d at 1056. Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

B.    Standards Applicable to the Affirmative Defense
      of Failure to Exhaust Remedies

Defendants have asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies. A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. 42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 734. "This requirement is a strong one. To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available, even when the state cannot grant the particular relief requested, and even where the prisoner[ ] believes the procedure to be ineffectual or futile." *Napier v. Laurel County, Ky.,* 636 F.3d 218, 222 (6th Cir. 2011) (internal quotations and citations omitted).

-8-

In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." 549 U.S. at 216.  The burden is on defendant to show that plaintiff failed to properly exhaust his administrative remedies.  The Supreme Court reiterated that "no unexhausted claim may be considered." 549 U.S. at 220.  The Court held that when a prisoner complaint contains both exhausted and unexhausted claims, the lower courts should not dismiss the entire "mixed" complaint, but are required to dismiss the unexhausted claims and proceed to address only the exhausted claims.  549 U.S. at 219-24.

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law.  *Jones v. Bock*, 549 U.S. at 218-19.  In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion." 548 U.S. at 93.  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90; *see Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009).  Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a section 1983 action in federal court.  548 U.S. at 90-93; *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011); *see* 42 U.S.C. § 1997e(a).  The procedural bar does not apply where the State declines to enforce its own procedural rules.  *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324–25 (6th Cir. 2010).

MDOC Policy Directive 03.02.130 (effective July 9, 2007) sets forth the applicable grievance procedures.[3]  In *Sullivan v. Kasajaru*, 316 F. App'x 469 (6th Cir. 2009), the Sixth Circuit held that this policy directive "explicitly required [the prisoner] to name each person against whom he grieved," and it affirmed the district court's dismissal of a prisoner's claim for failure to properly exhaust his available administrative remedies.  *Id.* at 470.

Policy Directive 03.02.130 is not limited to the requirement that the individual being grieved be named in the Step I grievance.  The following is an overview of the grievance process.  Inmates must first attempt to resolve a problem within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his control.  *Id.* at ¶ P.  If the mandatory pre-grievance attempt at resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted resolution.  *Id.*  The Policy Directive also provides the following directions for completing Step I grievance forms:  "The issues should be stated briefly but concisely. Information provided is to be limited to the *facts* involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places, and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ R (emphasis in original).  Thus, where an individual is not named in the Step I grievance, or his or her involvement in the issue being grieved is not indicated, or the individual is mentioned

_____

[3]A copy of the policy directive is found in the record.  *See* ECF No. 22-2, PageID.239-45.

for the first time during an appeal of a denial of a grievance, the claims against that individual are not properly exhausted. *See Ketzner v. Williams*, No. 4:06-cv-73, 2008 WL 4534020, at * 16 (W.D. Mich. Sept. 30, 2008) (collecting cases); *accord Sullivan v. Kasajaru*, 316 F. App'x at 470.

The inmate submits the grievance to a designated grievance coordinator who makes an initial determination whether it should be rejected under MDOC policy or assigns it to a respondent. P.D. 03.02.130 at ¶¶ W, X. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by the policy. The Step II respondent is generally the warden or the warden's designee. *Id.* at ¶ DD. If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶ FF. The Step III appeal form must be sent to the Grievance and Appeals Section within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the Step III respondent. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ S. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing." *Id.*

Ordinarily, a prisoner must pursue appeals of his grievance through Step III of the administrative process. The Sixth Circuit has "clearly held that an inmate does not exhaust available administrative remedies when the inmate fails entirely to invoke the grievance procedure." *Napier*, 636 F.3d at 224. An argument that it would have been futile to file a grievance does not suffice. Assertions of futility do not excuse plaintiff from the exhaustion requirement. *See Napier*, 636 F.3d at 224; *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) ("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see Booth v. Churner*, 532 U.S. at 741 n.6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

C.    <u>Proposed Findings of Fact</u>

The following facts are beyond genuine issue. Plaintiff is an inmate held in the custody of the Michigan Department of Corrections (MDOC) on criminal convictions. Plaintiff pursued 27 grievances through Step III decisions while he was an inmate at ICF, 18 of which concluded *after* plaintiff filed his complaint on November 27, 2013. (ECF No. 22-3, PageID.247-63). The grievances that plaintiff filed against the defendants named in this lawsuit are addressed below.

1.    Warden Stoddard

a.    Grievance No. ICF-13-05-1111-28c

-12-

On May 28, 2013, ICF's grievance coordinator received a grievance from plaintiff against Warden Stoddard and assigned it Grievance No. ICF-13-05-1111-28c. (ECF No. 30, PageID.412). Plaintiff's primary complaint in this grievance was an alleged failure to provide a barber to perform haircuts as often as required by MDOC policy, but he appended a host of additional complaints:

> I am not afforded my right to a haircut and the right to be in a clean environment. P.D. 03.02.120 and the segregation rule book requires unit officers to provide me with a monthly haircut. P.D. 03.03.130 also gives me the right to be in a clean environment. The unit officers have been failing to present a barber to us as required in policy. I am not allowed sanitary supplies to clean my cell, the unit showers are filthy with mildew, urine stains, and the smell of feces. The food cart in which my meals are placed [] is full of ants, germs, and diet [sic]; the water in my cell is contaminated with rust; the ventilation in my cell blows out harmful smoke that causes me chest pains. The toilet backwashes debris and feces every time I flush it. Warden Stoddard and Deputy Huss refuse to address these issues. I continue to complain about not being provided a barber and inhumane housing conditions. Warden Stoddard always encourage[s] these conditions by ordering no changes. The other level 5 segregation prisoners are given sanitary supplies on a monthly basis. On 5/16/13 Warden Stoddard told me to deal with these conditions.

(ECF No. 30, PageID.412). Plaintiff's grievance was rejected at Step I of the grievance process because he had raised multiple unrelated issues in a single grievance in violation of P.D. 03.02.130 ¶ G(1). (ECF No. 22-4, PageID.329). In his Step II appeal, plaintiff made an unsuccessful argument that his grievance did not raise multiple issues. (ECF No. 30, PageID.413). The Step I rejection of plaintiff's grievance was upheld at Step II because plaintiff had attempted to raise multiple unrelated issues in a single grievance in violation of PD 03.02.130 ¶ G(1). (ECF No. 22-4, PageID.329). On November 11, 2013, the MDOC's Grievance and Appeals Section upheld the

rejection of plaintiff's because the grievance raised multiple issues in violation of the MDOC's policy directive.  (ECF No. 22-4, PageID.327).

b.  Grievance No. 13-05-0997-27Z

On May 10, 2013, ICF's grievance coordinator received a grievance and assigned it  Grievance No. 13-05-0997-27Z.  (ECF No. 22-4, PageID.367).  In this grievance plaintiff complained about the tooth powder that he received for brushing his teeth and the size of the razor that he had been provided for shaving with as an ICF administrative segregation prisoner.  Plaintiff claimed that he had complained to the warden about the tooth powder and the size of the razor on March 28, 2013.  Plaintiff stated that as a security level 5 prisoner in administrative segregation he wanted "regular size double blade razors" and toothpaste rather than tooth powder.  (ECF No. 22-4, PageID.367).  This grievance was rejected at Step I of the grievance process.  (*Id.* at PageID.368).  Plaintiff's grievance was denied at Step II.  The warden stated that prisoners housed in administrative segregation at ICF are provided with tooth powder and a single blade razor consistent with the requirements of P.D. 04.05.120 ¶ V(7).  (*Id.* at PageID.366).  On November 11, 2013, the Grievance and Appeals Section upheld the denial of this grievance.  (*Id.* at PageID.364).

c.    Grievance No. ICF-13-09-1764-07Z

On September 17, 2013, plaintiff filed a grievance complaining that on September 12, 2013, Warden Stoddard had violated a court order in a "46th Circuit Court" case (Case No. 13-8199-ML) by failing to produce plaintiff for a video hearing. (ECF No. 30, PageID.424).  The Step I grievance response indicated that plaintiff refused to attend the video hearing.  (*Id.* at PageID.425).  Plaintiff pursued an appeal to Step II.  (*Id.* at PageID.426).  Plaintiff filed this lawsuit on November 27, 2013, long before he had completed an appeal of this grievance against Warden Stoddard through a decision at Step III of the MDOC's grievance process.  (*Id.* at PageID.427).

d.    Grievance No. ICF-13-11-2217-28J

On November 19 2013, ICF's grievance coordinator received a grievance and assigned it Grievance No. ICF-13-11-2217-28J.  (ECF No. 30, PageID.416).  In this grievance, plaintiff complained that Warden Stoddard had failed to provide a Step II response to two of his grievances:  Grievance No. ICF-2013-09-1788-09A and Grievance No. ICF-2013-09-1764-07Z.  On November 19, 2013, Grievance No. ICF-13-11-2217-28J was rejected at Step I of the grievance process.  (ECF No. 20-3, PageID.282).  Plaintiff filed this lawsuit on November 27, 2013.  On December 10, 2013, Grievance No. ICF-13-11-2217-28J was rejected at Step II because plaintiff could have appealed either underlying grievance to the next step of the grievance response if he had not received a timely Step II response.   (P.D. 03.03.130(T)).  Further, the grievance log indicated that plaintiff had received Step II responses to both underlying grievance appeals and that they had been returned to him on October 31, 2013.  (ECF No. 22-3, PageID.280).

Plaintiff filed this lawsuit months before he had received a Step III decision on this grievance. (*Id.* at PageID.278).

e.   Grievance No. ICF 13-11-2250-03F

On November 22, 2013, ICF's grievance coordinator received a grievance against Warden Stoddard and assigned it Grievance No. ICF 13-11-2250-03F. In this grievance, plaintiff complained that he was being provided with used razors. (ECF No. 30, PageID.420). The Step I response assured plaintiff that he had never been given a used razor and that his grievance was being denied because it was based on a false statement. (*Id.* at PageID.420). Plaintiff filed this lawsuit long before he received the Step II response to this grievance. (*Id.* at PageID.422).

2.   Inspector Nevins, Captain Hogle, and Librarian Novak

a.   Grievance No. ICF-13-12-2298-17G

On November 25, 2013, plaintiff drafted Grievance No. ICF-13-12-2298-17G against Inspector Nevins. The date it was received by ICF's grievance coordinator is not shown on the face of the grievance, but it could not have been before November 25, 2013. In this grievance, plaintiff complained Inspector Nevins confiscated property during the search of plaintiff's cell on November 21, 2013. (ECF No. 30, PageID.429). Plaintiff filed this lawsuit before he received the Step I response to this grievance. (*Id.* at PageID.430).

b.   Grievance No. ICF-13-05-0946-28E

On May 1, 2013, ICF's grievance coordinator received a grievance from plaintiff and assigned it Grievance No. ICF-13-05-0946-28E. (ECF No. 30, PageID.446).

Plaintiff complained that Captain Hogle had arbitrarily censored and destroyed three letters that plaintiff had attempted to send in late January 2013 to from the prison to Department of Community Health, Civil Service Commission, and the MDOC's director. Further, plaintiff complained that Hogle censored and destroyed "four other complaints" about conditions at ICF that he "attempted to send to [his] sister, [a] religious organization, [M]DOC Mental Health Program and a Catholic nun." (ECF No. 30, PageID.446). This grievance regarding the handling of his outgoing mail was rejected at Step I. (*Id.* at PageID.447). Plaintiff pursued an appeal. On May 22, 2013, the Warden Stoddard denied plaintiff's appeal at Step II for the following reasons:

> Prisoner Jackson is classified to administrative segregation at ICF.
>
> Paragraph R of PD 05.03.118 *Prisoner Mail*, states in part, outgoing mail of prisoners in any form of segregation other than protective segregation shall not be sealed and shall be inspected by staff prior to mailing.
>
> Evidence supports that prisoner Jackson has been stalking, harassing, and mailing letters to thirteen MDOC female staff members. Prisoner has mailed the female staff members sexually explicit and harassing letters.
>
> Prisoner Jackson has been issued thirteen Notice of Intents to Conduct An Administrative Hearing (CSJ-282) to Cease and Desist Communication to MDOC staff members.
>
> Prisoner Jackson has admitted to each of these thirteen Notice of Intents to Conduct An Administrative Hearing.
>
> Evidence does not support prisoner Jackson's allegation.
>
> Evidence does not support a violation of MDOC policy or procedure.

(ECF No. 30, PageID.447). Plaintiff filed his complaint in this Court before the Grievance and Appeals Section made its Step III decision. (*Id.* at PageID.449).

-17-

c.      Grievance No. ICF-13-04-0749-19Z

On April 3, 2013, ICF's grievance coordinator received a grievance from plaintiff against Captain Hogle and assigned it the grievance number indicated above. (ECF No. 30, PageID.450). In this grievance, plaintiff complained that Captain Hogle had violated his right of access to court by confiscating his legal papers:

> On 3/28/13, Captain T. Hogle confiscated all my personal property, which includes my legal work, books, magazines, religious materials, letters from family, writing paper and utensils. Captain Hogle claim[s] that he had taken my property for an investigation, but this officer is preventing me from litigating several pending lawsuits I have against MDOC staff. Captain Hogle is withholding my legal work and paperwork in order to discourage me from pursuing my civil cases, which is a violation of my right of access to court. Thus far, Captain Hogle has had possession of my legal papers for a total of five (5) days and does not intend on returning my property to me as I have deadlines to meet with the court regarding my civil cases. Capt. Hogle has failed to return my property to me, and it is clear that he is acting in retaliation for cases I have against staff. Not only that, but his investigation has nothing to do with my legal work and I am entitled to have it back. I am also entitled to my personal property while in segregation. Again, Capt. Hogle is abusing his authority by withholding my legal work to infringe on my access to court. This officer admitted to me on 3/28/13 that he despised my litigation.

(*Id.*).

On April 23, 2013, plaintiff received the following Step I response:

> Grievant alleges that Capt. Hogle took his property which includes his legal work, books, magazines, paperwork, and religious materials. Grievant also alleges that Capt. Hogle is refusing to return his property in retaliation to lawsuits that are pending. When prisoner Jackson['s] property was taken he was informed by Capt. Hogle as to why his property was being taken and that he would have it for some time. During the course of searching prisoner Jackson's property it was discovered that he had personal information on several state employees, maps of Michigan and copies of sexually explicit letters that he had been writing to these employees. Prisoner Jackson['s] property has been searched and all items and material that he is allowed to have and does not pertain to the investigation has been returned back to him. There is no evidence to support the grievant's allegations that his property was taken in retaliation

-18-

> to pending lawsuits that he may have pending. At this step this grievance is
> denied.

(ECF No. 30, PageID.451). Plaintiff pursued an appeal to Step II. (*Id.* at PageID.453).
On May 6, 2013, the Warden Stoddard entered her decision affirming the Step I
response. (*Id.* at PageID.452). On October 21, 2013, the Grievance and Appeals
Section issued its Step III decision upholding the denial of plaintiff's grievance. (ECF
No. 22-4, PageID.355).

### d.      Grievance No. ICF-13-04-0906-28A

On April 26, 2013, ICF's grievance coordinator received a grievance from
plaintiff and assigned it the grievance number indicated above. (ECF No. 22-4,
PageID.372). In this grievance plaintiff continued to complain about Captain Hogle's
confiscation of his personal property. (*Id.*). This grievance was rejected at Step I
because it was duplicative of Grievance Nos. ICF-13-04-0749-19Z and ICF-13-04-0833-
19Z. (ECF No. 22-4, PageID.373). Plaintiff pursued an appeal. The warden denied
plaintiff's Step II appeal because this grievance was duplicative of earlier grievances.
(*Id.* at PageID.371). On November 11, 2013, the Grievance and Appeals Section upheld
the rejection of this grievance because it was duplicative. (*Id.* at PageID.369).

### e.      Grievance No. ICF-13-05-1063-14e

On May 21, 2013, ICF's grievance coordinator received a grievance from plaintiff
and assigned it Grievance No. ICF-13-05-1063-14e. (ECF No. 22-4, PageID.363). In
this grievance against Law Librarian Joe Novak, plaintiff complained that during a
three week period in late April through May 14, 2013, Novak had not provided plaintiff

with unspecified "law books" that he had requested.  Plaintiff expressed a suspicion that Captain Hogle told the librarian not to provide the books because plaintiff had an unspecified pending lawsuit against Hogle:

> The law librarian has been failing to provide me with law books to litigate my civil/criminal cases.  For the past three weeks, I have been sending the law librarian segregation law library request forms for law books.  I have not been getting any books.  I have been continuously submitting request after request, to no avail.  Other similarly situated prisoners have been receiving their law books, but I never receive mine.  Library Assistant Orzula and I talked about this on 5/14/13, but he was unable  to provide me with an explanation as to why the law librarian is denying me access to the law library.  I am entitled to use the law library just like the other prisoners.   The librarian's conduct of restricting me access to the law library is against policy and violates my First and Fourteenth Amendment.  I believe Captain Hogle has been advising the librarian to deny me law books because of the pending lawsuit I have against him.  Hogle once stated that he would make sure I get no law books.  So the respondent should investigate Captain Hogle as to why I am restricted access to the law library.  This has become a pattern, dating back to February.

(*Id.*).  The Step I response indicated that this grievance had been resolved because a procedure had been implemented to ensure that plaintiff's book requests were received by the librarian.  (*Id.*).  Plaintiff pursued an appeal.  On August 2, 2013, the warden issued the decision at Step II.  She found that plaintiff had not been denied access to the law library or legal materials.   Plaintiff's requests were fulfilled when the materials that he requested were available.  (*Id.* at PageID.362).  On November 11, 2013, the Grievance and Appeals Section denied plaintiff's Step III appeal.  (*Id.* at PageID.360).

### f.      Grievance No. ICF-13-05-1106-26I

On May 28, 2013, ICF's grievance coordinator received a grievance and assigned it Grievance No. ICF-13-05-1106-26I.  In this grievance, plaintiff complained that on

May 6, 10, and 13, 2013, his complaints and grievances regarding conditions at ICF were taken out of his cell. Plaintiff expressed his belief that the action had been taken by unit officers on the instructions of Captain Hogle and Inspector Nevins. (ECF No. 22-4, PageID.348). The Step I response stated that no such instructions had been given. Further, cell searches are required under MDOC policy. (*Id.* at PageID.349). Plaintiff's appeals to Steps II and III of the MDOC's grievance process were denied. (*Id.* at PageID.345-47).

### 3.   Corrections Officers Wood and Wellman

#### a.   Grievance No. ICF-13-09-1699-28E

On September 4, 2014, ICF's grievance coordinator received a grievance against Corrections Officers Rutgers and Wellman and assigned it the grievance number indicated above. (ECF No. 30, PageID.434). In this grievance, plaintiff alleged that on July 24, 2013, Rutgers and Wellman had interfered with his access to courts:

> Correctional Officers Rutgers and Wellman denied me access to a court hearing that was supposed to be held via video at control center on 7/24/2013. Rutgers and Wellman kept me confined in my cell on the date of the hearing and then made fabrications to control center that I refused to participate in my hearing. As a result of these officers['] conduct, I was denied access to the court and received legal prejudice from the conduct.

(*Id.*). This grievance was rejected at Step I of the grievance process because it was untimely. (*Id.* at PageID.436). On October 10, 2013, the warden entered her decision at Step II denying the grievance because it was untimely. (*Id.*). Plaintiff filed his complaint in this Court before the Grievance and Appeals Section made its Step III decision. (*Id.* at PageID.437).

D.     Discussion

Defendants have raised the affirmative defense that plaintiffs did not properly exhaust their administrative remedies against them as required by 42 U.S.C. 1997e(a). Exhaustion is mandatory. *Woodford*, 548 U.S. at 85. "[N]o unexhausted claim may be considered." *Jones v. Bock*, 549 U.S. at 220.

1.     Warden Stoddard

Plaintiff argues that Grievance No. ICF-13-05-1111-28c exhausted his administrative remedies against Warden Stoddard. (Plf. Brief at 2, ECF No. 29, PageID.405). Grievance No. ICF-13-05-1111-28c was rejected because it raised multiple unrelated issues in violation of P.D. 03.02.130 ¶ G(1). The PLRA requires proper exhaustion. *See Woodford*, 548 U.S. at 92. Thus, when a prisoner fails to file a procedurally proper grievance, he fails to satisfy the PLRA's exhaustion requirement. Plaintiff's grievance was rejected. It did not properly exhaust any claim against defendant Stoddard. *See Richmond v. Settles*, 450 F. App'x 448, 457 (6th Cir. 2011).

Plaintiff attempts to overcome the fact that his grievance was rejected at all three steps of the MDOC's grievance process because it raised multiple issues, by arguing that the warden should not have been the Step II respondent. (Plf. Supplemental Brief at 1-2, ECF No. 33, PageID.456-57) (citing P.D. 03.02.130 ¶ (U). This argument is meritless. Plaintiff cites no legal authority in support of his argument. If plaintiff is attempting to rely on the "merits-based-review" rule announced by the Sixth Circuit in *Reed-Bey v. Pramstaller*, 603 F.3d 322 (6th Cir. 2010), his reliance is misplaced. In *Reed-Bey*, the Sixth Circuit, drawing an analogy

to procedural default in the habeas corpus context, held that where prisoner Reed-Bey had received "merits based responses at each step" of the grievance process and the MDOC had never enforced its own procedural requirements against the prisoner's grievance, the MDOC could not enforce a procedural bar it had never relied on to establish that the claims asserted in the grievance were unexhausted. *Id.* at 326. The Sixth Circuit summarized the rule as follows: "When prison officials decline to enforce their own procedural requirements and opt to consider otherwise defaulted claims on the merits, so as a general rule will we." *Id.* at 325. Here, plaintiff did not receive a merits-based review at any step of the grievance process. His grievance was rejected at every step because it raised multiple unrelated issues in a single grievance in violation of PD 03.02.130 ¶ G(1). (ECF No. 22-4, PageID.329; *see* ECF No. 22-2, PageID.240; ECF No. 30, PageID.327).

The paragraph of the policy directive invoked by plaintiff further undermines his argument attacking the warden's decision at Step II. Paragraph U of the policy directive does not apply to a grievance which has been rejected because it raises multiple issues. Paragraph U applies when a single "issue" is being grieved: "Prisoners and staff who may be involved in the *issue* being grieved shall not participate in any capacity in the grievance investigation, review, or response, except as necessary to provide information to the respondent." (P.D. 03.02.130 ¶ (U), ECF No. 22-2, PageID.242) (emphasis added). Further, if plaintiff believed that the warden should not have been the person reviewing his Step II appeal, the time for him to state and preserve his objection and establish the grounds on which his objection rested was

before the warden made her decision, not after he filed this lawsuit. Plaintiff long ago waived any objection to the identity of the Step II-decisionmaker. In any event, the final decision regarding the rejection of Grievance No. ICF-13-05-1111-28c was made by the MDOC's Grievance and Appeals Section. Grievance No. ICF-13-05-1111-28c did not properly exhaust any claim that plaintiff is asserting in this lawsuit.

Plaintiff argues that Grievance No. ICF-13-11-2217-28J exhausted his retaliation claim against Warden Stoddard. (Plf. Brief at 2, PageID.405). Plaintiff filed this grievance two weeks before he filed his complaint -- long before he had secured a Step III decision from the Grievance and Appeals Section or the 120-day period for providing a response had expired. The other grievances that plaintiff relies on in support of his claims against Warden Stoddard (Plf. Brief at 3, PageID.406; Plf. Supplemental Brief 2, PageID.457)(citing Grievance Nos. ICF-13-09-1764-07Z and ICF 13-11-2250-03F) suffer from the same fatal defect. A prisoner cannot file his lawsuit first and then exhaust his administrative remedies after-the-fact. *See Jackson v. Huss*, No. 1:14-cv-426, 2015 WL 5691026, at * 5 (W.D. Mich. Sept. 28, 2015); *see also Rivera v. Michigan Dep't of Corr.*, No. 1:14-cv-214, 2015 WL 5432712, at * 5 (W.D. Mich. Sept. 15, 2015); *Wilbon v. Michigan Dep't of Corr.*, No. 13-14404, 2015 WL 1004707, at * 3 (E.D. Mich. Mar. 6, 2015); *Mexico v. Meehan*, No. 2-13-cv-02, 2014 WL 533274, at * 4 (W.D. Mich. Feb. 11, 2014).

### 2. Inspector Nevins

Plaintiff argues that he exhausted claims against defendant Nevins regarding interference with plaintiff's Jewish beliefs and placing restrictions on his mail through

Grievance No. ICF-13-12-2298-17G.  (Plf. Brief at 3, PageID.406).  Plaintiff filed his complaint on November 27, 2013.  He filed Grievance No. ICF-13-12-2298-17G in December 2013, a month *after* he filed his complaint.  This grievance did not properly exhaust any claim found in plaintiff's complaint.

Alternatively, plaintiff argues that he exhausted his claim regarding Inspector Nevins's handling of his mail through Grievance No. ICF-13-05-0946-28E.  (Plf. Brief at 3, PageID.406).  This grievance concerned the outgoing mail that he was attempting to send to others from prison.  The claim in plaintiff's complaint concerns Nevins's handling of *incoming* mail from "Jewish believers and Jewish organizations."  (Compl. at 6-7, PageID.6-7).  Grievance No. ICF-13-05-0946-28E did not properly exhaust any claim against defendant Nevins.

3.    Captain Hogle

Plaintiff argues that Grievance No. ICF-13-05-0946-28E exhausted a claim that from March 2013, through November 30, 2014, Captain Hogle "would destroy plaintiff's complaints and grievances  in order to prevent plaintiff from sending out the facility to organizations [sic]."[4]  (Plf. Brief at 5, PageID.408).  Leaving aside the fact that plaintiff's grievance was not nearly so broad, Grievance No. ICF-13-05-0946-28E did not properly exhaust any claim because plaintiff filed his complaint before he had

---

[4]The Court takes judicial notice of its own records.  Plaintiff's vague assertion that Hogle destroyed his complaints and grievances is untenable given his prolific use of the grievance process and the number of lawsuits and motions that plaintiff filed during the period in question.   *See e.g.*,  *Jackson v. Hogle, et al.*, 1:13-cv-475 (W.D. Mich.); *Jackson v. Karppinen, et al.*, 2:11-cv-482 (W.D. Mich.); *Jackson v. Pittsley, et al*, 2:12-cv-382 (W.D. Mich.);

pursued this grievance through Step III.  This grievance did not properly exhaust any claim against Captain Hogle.

Plaintiff argues that Grievance No. ICF-13-04-0749-19Z exhausted his claim that Captain Hogle "destroyed all of plaintiff's religious materials along with all the rest of plaintiff's personal property[.]" (Plf. Brief at 6, PageID.409).  It did not.  Grievance No. ICF-13-04-0749-19Z was a grievance complaining that Hogle's seizure of property on March 28, 2013, constituted interference with his access to courts because it prevented him from litigating pending lawsuits.  Plaintiff has no viable access to court claim given his extensive motion practice in this Court during this period.  Further, plaintiff conceded in one of his earlier lawsuits that when the property was seized on March 28, 2013, Captain Hogle filed a misconduct charge against plaintiff and that a hearing officer found him guilty of the misconduct charge.  *See Jackson v. Hogle, et al.*, 1:13-cv-475 (W.D. Mich.) (Compl. at 4, PageID.4).

Plaintiff argues that Grievance No. ICF-13-05-1106-26I should be considered as adequate to exhaust a claim that from March 2013, Hogle "did searches" of his cell and confiscated plaintiff's complaints that contained content about prison conditions.  (Plf. Brief at 6, PageID.409).  It is not.  Again, plaintiff's grievance was not nearly as broad as he now claims.  His complaint in Grievance No. ICF-13-05-1106-26I was that on May 6, 10, and 13, 2013, unit officers removed unspecified complaints and grievances from his cell, ostensibly at the direction of Captain Hogle.  The grievances that plaintiff continued to successfully file during this period as well as his grievance appeals render

any claim on the purportedly missing documents untenable.[5]  (*see e.g.*, ECF No. 22-4, PageID.334, 341, 348, 356, 363, 367).

4.    Corrections Officers Wood and Wellman

Plaintiff states that he exhausted his administrative remedies on his First Amendment claim that defendant Wellman kept him from attending a video hearing held on 7/24/13 through Grievance No. ICF-13-09-1699-28E.  (Plf. Brief at 4, PageID.407).  Plaintiff did not properly exhaust any claim against Officer Wellman (or Officer Wood) through this grievance.  An untimely grievance fails to satisfy the PLRA's "proper exhaustion" requirement.  *See Woodford v. Ngo*, 548 U.S. at 83; *Scott v. Amban*i, 577 F.3d 642, 647 (6th Cir. 2009) ("*Woodford* makes clear that a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance.").  In addition, Grievance No. ICF-13-09-1699-28E did not properly exhaust any claims against defendants Wood and Wellman because plaintiff filed his complaint before he had received a Step III decision by the MDOC's Grievance and Appeals Section.  *See Mexico v. Meehan*, 2014 WL 533274, at * 4.

Plaintiff argues that Grievance No. ICF-13-05-1106-26I exhausted his retaliation claim against defendants Wellman and Wood.  (Plf. Brief at 4, PageID.407).  Officers

---

[5]It is also appropriate to note at this juncture that plaintiff filed a complaint on May 2, 2013, in which he represented to this Court that he had been diagnosed with manic depressive psychosis and that he was suicidal, hallucinating, hearing voices, and that he had refused to take his medication because he had paranoid thoughts. *Jackson v. Hogle*, et al., 1:13-cv-475 (W.D. Mich.) (Compl. at 4-5, PageID.4-5).

Wellman and Ward are not mentioned anywhere in plaintiff's grievance. (ECF No. 30, PageID.438). Wood and Wellman are not mentioned anywhere in plaintiff's appeals to Step II and III of the grievance process. (*Id.* at PageID.440). Plaintiff states that he "submitted letters to the prison warden" about Officers Wood and Wellman. (Plf. Brief at 5, PageID.408). Whatever correspondence plaintiff may or may not have sent to the warden was outside the MDOC's grievance process and did not properly exhaust any claim against defendants. Grievance No. ICF-13-05-1106-26I did not properly exhaust any claim against Officers Wellman and Wood. *See Peterson v. Cooper*, 463 F. App'x 528, 530 (6th Cir. 2012); *Sullivan v. Kasajaru*, 316 F. App'x at 470.

In summary, plaintiff did not properly exhaust any claim that defendants challenged in their motion for partial summary judgment. I find that defendants have carried their burden on the affirmative defense and are entitled to dismissal of plaintiff's claims.

## Recommended Disposition

For the reasons set forth herein, I recommend that all plaintiff's claims for damages against defendants in their official capacities be dismissed with prejudice because they are barred by Eleventh Amendment immunity. I recommend that plaintiff's claim seeking injunctive relief against defendant Stoddard be dismissed because it is moot. I recommend that defendants' motion for partial summary judgment be granted and that all plaintiff's claims for damages against defendants in their individual capacities be dismissed with the exception of those excluded from defendants' motion. Defendants did not seek dismissal of plaintiff's claims that

Warden Stoddard provided him with tooth powder rather than toothpaste in violation of his Eighth Amendment rights and that Librarian Novak and Captain Hogle destroyed plaintiff's law library book request forms in violation of his First Amendment rights.

Dated:   January 25, 2016           /s/  Phillip J. Green
                                                    United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).